UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JERRY BUNNAO RACCA, ) | |
| ) | |
| Petitioner, ) | CASE NO. C11-1235-RSM-MAT |
| ) | (CR06-106-RSM) |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | REPORT AND RECOMMENDATION |
| ) | |
| Respondent. ) | |
| ) | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jerry Racca is currently in the custody of United States Immigration and Customs Enforcement ("ICE") in El Centro, California. He has filed a motion under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct the sentence imposed upon him following his 2007 plea to a charge of conspiracy to commit bank fraud. The government has filed an answer to petitioner's motion and petitioner has filed a response to the government's answer. After careful consideration of petitioner's motion, the briefing of the parties, and the balance of the record, this Court concludes that petitioner's § 2255 motion should be denied.

/ / /

## BACKGROUND

On March 29, 2006, a federal grand jury returned an indictment charging petitioner and six other individuals with one count of conspiracy to commit bank fraud. (*See* CR06-106-RSM, Dkt. No. 52.) On January 19, 2007, petitioner pleaded guilty to the conspiracy charge pursuant to a plea agreement entered into with the government. (*See id.*, Dkt. Nos. 232 and 235.) Among the facts agreed to by the parties, and set forth in the plea agreement, was that the total loss directly attributable to petitioner was $11,750. (*Id.*, Dkt. No. 235 at 5.) The total loss attributable to all of those charged in the indictment was substantially higher. (*See id.*, Dkt. No. 52 at 5.)

On April 20, 2007, petitioner appeared for sentencing before the Honorable Ricardo S. Martinez, United States District Judge. (*See id.*, Dkt. No. 268.) Judge Martinez sentenced petitioner to a term of 18 months confinement to be followed by a five year term of supervised release. (*See id.*, Dkt. Nos. 268 and 269.) Petitioner did not file a direct appeal. Petitioner has apparently completed his term of confinement and is now in the custody of ICE facing deportation. The Court received the instant § 2255 motion for filing on July 25, 2011.

## DISCUSSION

Petitioner asserts in his § 2255 motion that he was denied effective assistance of counsel during his federal criminal proceedings. Specifically, petitioner contends that counsel rendered ineffective assistance when he failed to research, and advise petitioner of, the immigration consequences of his guilty plea, and failed to advocate for an alternative charge or sentence in light of those immigration consequences. Petitioner further contends that he would not have waived his right to trial, and chosen to proceed with his plea, but for counsel's

ineffective assistance.

Petitioner relies primarily on the United States Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), to support his ineffective assistance of counsel claim. In *Padilla*, the Supreme Court held that the failure of counsel to advise her client of the risk of deportation arising out of the decision to plead guilty constituted constitutionally deficient performance. *Id*. at 1482. The government argues that *Padilla* does not apply to petitioner's case because it was decided after petitioner's conviction became final and does not apply retroactively to cases on collateral review. The government further argues that even if *Padilla* does apply to petitioner's case, petitioner cannot show that his right to adequate legal representation was violated. While other circuit courts have addressed the question of *Padilla*'s retroactivity, the Ninth Circuit has yet to weigh in on the issue.[1] This Court finds it unnecessary to address the retroactivity question as petitioner's ineffective assistance of counsel claim fails regardless of the applicability of *Padilla*.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687.

---

1 Three circuit courts of appeal have addressed the issue and have reached divergent results. The Third Circuit was the first to address the issue and held, in *U.S. v. Orocio*, 645 F.3d 630 (3rd Cir. 2011), that *Padilla* applies retroactively to cases on collateral review. The Seventh and Tenth circuits reached the opposite conclusion in *Chaidez v. U.S.*, 655 F.3d 684 (7th Cir. 2011), and *U.S. v. Chang Hong*, --- F.3d ---, 2011 WL 3805763 (10th Cir. 2011).

When considering the first prong of the *Strickland* test, judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland*, 466 U.S. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id.*

    1.    <u>Deficient Performance</u>

Petitioner's claim of deficient performance appears to rest on two grounds: (1) that counsel failed to research, and advise petitioner of, the immigration consequences of his guilty plea; and, (2) that counsel failed to negotiate for an alternate charge or sentence. The Court will take up each ground in turn.

/ / /

### *a.  Failure to Advise Petitioner of Immigration Consequences*

Petitioner asserts in his motion that his counsel, Peter Camiel, failed to advise him that his plea to the fraud charge would subject him to the risk of deportation because the offense constituted an "aggravated felony" within the meaning of the Immigration and Nationality Act. *See* 8 U.S.C. § 1101(a)(43)(M)(i) and 8 U.S.C. § 1227(a)(2)(A)(iii).  Petitioner also asserts in his motion that counsel misinformed him of the consequences of his plea by advising him that his plea would not result in immigration consequences.  Given these varied assertions, it is somewhat unclear whether petitioner intends to claim that counsel did not discuss possible immigration consequences at all, or discussed the possible immigration consequences but failed to properly advise petitioner of what those consequences would be.[2]

The government, in conjunction with its answer to petitioner's motion, has supplied the Court with a declaration from Mr. Camiel in which he acknowledges that he does not have a specific independent memory of discussing the immigration consequences of petitioner's guilty plea with him, but maintains that "I would never vary from my habit and practice of always discussing such an issue with a client who was not a U.S. Citizen.  As a result I am confident I would have had such a discussion with Mr. Racca."  Mr. Camiel describes his regular practice as follows:

---

[2]  This is but one of a number of inconsistencies found in petitioner's motion.  While petitioner purports to challenge his 2007 federal court judgment and sentence, he indicates that his current ICE custody relates to a two year state prison term which he served between 2009 and 2011.  (*See* Dkt. No. 1 at 3.)  Petitioner also makes a number of references to entry of a nolo contendre and/or no contest plea.  (*See, e.g.*, *id*. at 6-7.)  Not only is this terminology inconsistent with that used in federal courts, there is no indication in the record that petitioner entered the equivalent of such a plea, an *Alford* plea, in his federal criminal case.  Petitioner attached to his motion a declaration stating that all matters contained therein are true.  However, the inconsistencies identified by the Court appear to refute that.  It is simply unclear which of the factual assertions and allegations set forth in the motion actually apply to petitioner and which do not.

> It is my practice with all clients who are not U.S. Citizens to explain to them that a plea of guilty to any criminal offense could carry immigration consequences including deportation. When a client is considering pleading guilty to a felony level offense I am particularly careful to explain that such a guilty plea could well mean they will face deportation. I also explain that I am not an immigration lawyer and that if they have questions about the immigration consequences of a plea they need to consult with an immigration lawyer. I have had this practice regarding warning clients of immigration consequences for well over twenty years.

(Dkt. No. 10, Declaration of Peter Camiel at 1-2.)

Petitioner addresses Mr. Camiel's declaration in his response to respondent's answer. However, petitioner's response is somewhat unclear. Petitioner appears to contend that the absence of any mention of immigration consequences in his plea agreement, the sentencing memoranda of the parties, or the judgment undermines counsel's representation that he is confident he advised petitioner of those possible consequences. Petitioner also contends that Mr. Camiel works for the United States Attorney's Office and is therefore reluctant to concede that mistakes were made. Finally, petitioner appears to contend that Mr. Camiel's failure to mention in his declaration that he had recommended a specific immigration attorney to petitioner undermines counsel's representation that he did, in fact, have a discussion with petitioner regarding possible immigration consequences.

The absence of any reference in the court record to possible immigration consequences does not undermine Mr. Camiel's representation that he would have had a discussion with petitioner regarding such consequences during one of the eleven meetings or phone calls between the two which preceded petitioner's entry of his guilty plea. Petitioner's contention that Mr. Camiel works for the United States Attorney's Office is patently false and doesn't warrant any discussion. Finally, the lack of any reference in Mr. Camiel's declaration to a

specific immigration attorney does not undermine Mr. Camiel's statement that he would have directed petitioner to consult with an immigration attorney if he had questions regarding the immigration consequences of his plea.

Petitioner offers no credible evidence or argument to dispute Mr. Camiel's representation that he is confident he had a discussion with petitioner regarding possible immigration consequences of his guilty plea. Accordingly, this Court concludes that Mr. Camiel did properly advise petitioner that his guilty plea carried with it a risk of deportation and that Mr. Camiel's representation therefore was not deficient in this regard.

### *b.* *Failure to Negotiate a Different Resolution*

Petitioner also argues in his motion that Mr. Camiel was ineffective for failing to negotiate an alternative charge or sentence. Petitioner's contention that counsel rendered ineffective assistance when he failed to negotiate an alternative charge assumes that the government would have been willing to negotiate a different charge which did not carry with it the same immigration consequences as the charge to which petitioner pleaded guilty. Petitioner makes no such showing and, thus, he fails to establish deficient performance in this regard.

Petitioner's contention that counsel rendered deficient performance by failing to negotiate a different sentence likewise provides no basis for relief. It appears that the immigration consequences which attached to petitioner's conviction arose out of the amount of loss involved in the fraud to which he pleaded guilty, not the length of the sentence imposed. *See* 8 U.S.C. § 1101(a)(43)(M)(i). Thus, counsel's failure to negotiate a different sentence does not constitute deficient performance.

2. <u>Prejudice</u>

In this Court's view, petitioner has not established deficient performance on the part of Mr. Camiel. However, even if Mr. Camiel's performance could be deemed deficient, petitioner has not established prejudice. As noted above, in order to establish prejudice in the circumstances presented here, petitioner must demonstrate that absent counsel's alleged failure to advise petitioner regarding the immigration consequences of his plea, petitioner would not have pleaded guilty and would, instead, have insisted on going to trial.

The record demonstrates that the plea negotiated for petitioner was beneficial as it limited the amount of loss for which petitioner was held accountable. Specifically, petitioner was held accountable only for the loss arising out of the fraud that he perpetrated or recruited others to perpetrate – this amount totaled $11,750. The government noted in its sentencing memorandum that the losses attributable to the entire group of individuals who participated in the conspiracy exceeded $200,000, and the losses attributable to those who were charged with crimes exceeded $75,000.

Had petitioner elected to proceed to trial, he might have been held accountable for the higher loss amounts identified by the government and he likely would have foregone any adjustment for acceptance of responsibility. These two factors would have resulted in a significantly higher offense level and, thus, a significantly higher sentencing guideline range. While the risk of deportation may, in many respects, be viewed as a more onerous penalty than a lengthy period of incarceration, petitioner has not persuaded this Court that it was a trade-off he was willing to make at the time he entered his guilty plea. Accordingly, petitioner has not established that he was prejudiced by counsel's alleged deficient performance.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2255 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is entitled to a certificate of appealability with respect to his claim that he was denied effective assistance of counsel when counsel failed to advise him of the immigration consequences of his guilty plea.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's motion for relief under § 2255 be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be granted. A proposed order accompanies this Report and Recommendation.

DATED this 9th day of February, 2012.

Mary Alice Theiler
United States Magistrate Judge